IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

      vs.                                                     Criminal No. 15CR4276 MCA

MATTHEW MARTINEZ

      Defendant.

### OBJECTIONS TO PRESENTENCE REPORT AND MOTION FOR VARIANCE

**COMES NOW** the Defendant, and hereby files Objections to the PreSentence Report, and a Motion for Variance pursuant to 18 U.S.C. §3553. The Defendant requests the Court to find that Mr. Martinez' background merits favorable treatment.

The Office of Probation determined the base offense level at twenty four (24). A two level upward adjustment for possession of a dangerous weapon pursuant to U.S.S.G. 2D1.1(b)(1) was applied. An additional two (2) level upward adjustment for maintaining a premises for the purpose of distributing a controlled substance pursuant to 2D1.1(b)(12) was applied. The final adjusted offense level is twenty eight (28), minus three levels for acceptance responsibility, results in a final offense level of twenty five (25). A level twenty five (25) combined with a criminal history of III results in a guideline imprisonment range of 70-87 months. The Defendant avers that there is not a factual basis to support the application of U.S.S.G. 2D1.1(b)(12), that is, maintaining a premises. Therefore, the final adjusted offense level should be level twenty six (26), minus three levels for acceptance of responsibility for a final offense level of twenty three (23),

combined with a criminal history of III results in a guideline imprisonment range of 57-71 months.  The Defendant respectfully requests the Court to vary from the term of 57 months.  The Defendant also qualifies for the 500 hour drug program called RDAP.

**I.   The distribution of a controlled substance was not the primary or principal use of Defendant Matthew Martinez' family home, but rather one of Defendant's incidental or collateral uses of the premises.**

U.S.S.G. 2D 1.1(b)(12) states: *If the defendant maintained a premises for the purpose of manufacturing or distributing a Controlled Substance, increase by two (2) levels.*

Application note 17, third paragraph states:  *Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises.  In making this determination; the Court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.*

Courts have applied U.S.S.G.§2D1.1(b)(12) under circumstances where the defendant used the premises for the purpose of <u>substantial</u> drug trafficking activities, even when the premises was the family home.  <u>U.S. v. Miller</u>, 698 F.3d 699 (8th Cir. 2012).  In the <u>Miller</u> case, the Government had direct evidence of at least three controlled buys at the home, and Miller received drug payments at the home.

The Court in <u>U.S. v. Sanchez</u>, 710 F.3D 724 (7TH CIR. 2013) posed the inquiry of 2D1.1(b)(12) as "whether the drug transactions were a second primary use of the premises or were instead merely a collateral use."  <u>Sanchez</u> at 729.  The Court focused on the frequency of use factor and whether the sales from such use were "substantial" to determine whether the sale of drugs was the primary or principal use of the premises, <u>Sanchez</u> at 730 and 731.  In <u>Sanchez</u>, <u>all</u> of the transactions occurred in the home.  There was no mention of transactions taking place away from the home.  <u>Sanchez</u> received

"massive amounts" (40 kilograms) of cocaine at his home, sold and stored drugs in his home, allowed meetings among whole sellers of drugs in his home.  Sanchez had no legitimate job and no source of income beyond drug sales.

In this case before the Court, Mr. Martinez was indicted for distributing heroin on three (3) separate dates.  The first transaction took place at a restaurant in Albuquerque.  Mr. Martinez' home is in Espanola, New Mexico.  The second transaction did take place at his house.  The third transaction took place in a parking lot for Wal-Mart in Santa Fe.  Hence, most of the transactions in this case took place away from the family home.

The Office of Probation commented, in support of the adjustment, that surveillance of Mr. Martinez' home observed two (2) vehicles drive up to the residence for a short period of time and then leave which is indicative of narcotics trafficking.  The Defendant's response is that the agents engaged in surveillance for a short thirty five (35) minutes.  During the thirty five (35) minutes, the agents observed two (2) cars pull up and leave.  The assumption is, without direct knowledge, that the visits indicate distribution of narcotics.  The short visits are also indicative of innocent activity.  Mr. Martinez lives in a small tight-knit community where many of his neighbors are related to him or his wife.  The agents did not get a license plate number for the vehicles to determine the identity of the driver or the owner of the cars.  The agents did not actually see a hand to hand exchange.  A stronger basis to conclude distribution of narcotics could be made had the agents surveilled the house for one full day or even half day and observed thirty (30) cars pull up and quickly leave. The more common practice is to conduct the transactions in a parking lot of a business in order to avoid attention from neighbors and police.

Mr. Martinez worked as a barber prior to his arrest, and his wife works at a nursing home. Both had legitimate sources of income. Mr. Martinez was not a major distributor. He admits he sold enough heroin to support his own habit. The family home was used principally as a home and only incidentally on occasion to distribute drugs. The confidential informant who did the controlled buy was known and supposedly was a good friend of Mr. Martinez. The facts in this case do not support the frequency of use factor or the substantial use factor discussed in the Miller or Sanchez cases, which examined §2D1.1(b)(12).

## II.  Application of Sentencing factors pursuant to 18 U.S.C. §3553(a) merit a variance.

### Nature and Circumstance of the Offense.

Mr. Martinez came to the attention of investigators through a confidential informant who was a friend of Mr. Martinez. Mr. Martinez was discharged from prison in 2006. Mr. Martinez is associated with the SNM gang. However, he is not part of the three larger indictments of the SNM gang. As stated earlier, Mr. Martinez engaged in three controlled buys. The first two (2) buys involved the ex-friend, the third and final buy involved an undercover agent. Mr. Martinez was solicited by the ex-friend and members of SNM to engage in this activity. Otherwise, Mr. Martinez would not be in this situation.

### History and Characteristics of Defendant

Mr. Martinez started using heroin at the age of thirteen (13). He was introduced to the drug by his older brother, who is eleven years older, and cousins. Mr. Martinez, at age thirteen (13), did not know the devastating effects heroin would have on his life. Most thirteen (13) years olds know very little about life. His brother and cousins

completely misguided Mr. Martinez.

Mr. Martinez was shot at the age of twelve (12) in a drive by shooting at the school he attended. He was clearly a victim of gun violence, which is traumatic event even for an adult. Mr. Martinez never received the proper psychological assistance to deal with the trauma and in all likelihood suffered from PTSD. Mr. Martinez' mother stated to probation that he was a good kid who performed well in school. Mr. Martinez started doing poorly in school after he was shot.

Mr. Martinez dropped out of high school during his sophomore year because he was strung out. Nonetheless, he earned a GED, graduated from barber school and business from Northern New Mexico College in 2011. He attended school full time from 2008 to 2011. He has a certificate in business.

Mr. Martinez has been married for eight (8) years and has a five-year-old daughter and two stepsons. He purchased a home in 2012 and placed it on land owned by his mother. His mother lives next door. His wife completed nursing school and is now working fulltime caring for the elderly. Matthew's wife, kids and his mother rely on him to attend to the maintenance of the house and to drive the kids to school and activities. Matthew's mother is not in good health. She has had open-heart surgery three (3) times.

Mr. Martinez was paroled from prison in 2006. He has managed to complete school, get married and buy a house before he was arrested for these charges in December 2015. He was living his life as normal as possible until he was set up by the F.B.I. Mr. Martinez assisted his wife, kids and mother in the daily business of life. He took care of his business as a barber, and did not actively engage in criminal activity except to support his drug habit. He managed to stay out of prison for nine (9) years.

The criminal history of Mr. Martinez is all drug related including two DWI arrests in 2009 and 2010.  The arrests in paragraphs 44, 45, 46, and 47 were consolidated in state court in which an 18-month term of probation was imposed.  Separate points were assessed for each arrest and conviction.  Although correct under the guidelines, the four points have driven up the guideline range.

### The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and to Provide Just Punishment of the Offense.

A Sentence less than fifty-seven (57) months will reflect the seriousness of the offense, promote respect for the law and provide just punishment.   Mr. Martinez was not a substantial distributer of heroin.  The bigger fish are part of a separate indictments.  He sold just enough heroin to support his own addiction.  He managed to get his life together after he was discharged from prison in 2006, he can do it again.  He is committed to his family.  He was betrayed by his brother and cousins when he was thirteen (13) years old.  He was betrayed by a person who he thought was a friend in this investigation.  He betrayed himself by getting sucked into this case.  He will not do it again.

**WHEREFORE**, the Defendant prays the Court to vary from the term of 57-71 months.

                                    Respectfully submitted,

                                    <u>Electronically filed July 19, 2016</u>
                                    ANGELA ARELLANES
                                    Attorney at Law
                                    P.O. Box 1784
                                    Albuquerque, New Mexico 87103
                                    (505) 247-2417

**Certificate of Service**

**I HEREBY CERTIFY** that on the 19th day of July 2016, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more reflected on the Notice of Electronic Filing:

    AUSA Shana Long
    USPO Danielle J. Padilla


**/S/Angela Arellanes**
Angela Arellanes